IN THE UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re:
**EDITH M. CHEW,**           :     **CHAPTER 13**
**Debtor**

                                          :     **BANKRUPTCY NO. 20-12591**

**DEBTOR'S MEMORANDUM OF LAW IN SUPPORT OF HER OBJECTIONS TO PROOF OF CLAIM FILED BY NEW REZ, LLC ("NR")**

The Debtor filed the instant Chapter 13 bankruptcy case on June 10, 2020. This case had been preceded by a prior Chapter 13 bankruptcy case, filed in this court at Bankr. No. 18-12439 ("the Prior Case"), on April 12.2018, in which a plan was confirmed on January 29, 2019, and was ultimately dismissed on June 10, 2020.

On July 27, 2020, New Rez, LLC ("NR") filed Proof of Claim No. 3-1 on its behalf, asserting, inter alia, a right to a total secured claim of $169,475.60 and an arrearage of $20,370.85 against the Debtor. On September 24, 2020, the Debtor filed Objections to the calculation of arrears due in the claim. The portion of the claim which itemized the arrearages owed by the Debtor is "Part 3" of the claim, which states that the "Principal & interest due" is $9865.10; the "Prepetition fees due" are $450; the "Escrow deficiency for funds advanced" is $4639.38; the "Projected escrow shortage" is $6866.81, less $1450.55 "funds on hand," which came to $20,370.85.

The Objections were scheduled initially for a hearing on October 27, 2020. A Response to the Objections was filed on October 12, 2020. The hearing of October 27, 2020, was continued until November 27, 2020, and then until December 15, 2020. In a colloquy among counsel, the court, and the trustee on the latter date, NR's counsel reiterated his previous statement to the Debtor's counsel that his client had directed him to file an amended claim

1

because the filed claim was inaccurate, although NR's counsel never reported the nature of the planned amendment and in fact never filed an amended claim. The court continued the hearing until January 12, 2021, on a must-be-heard basis. The only filing made thereafter was on the morning of January 12, 2021, a "Supplemental Response" by NR attaching a motion to approve a loan modification agreement with the agreement attached which had been filed in the Prior Case in apparent support of the $450 fees referenced in the claim as originally filed.

The Objections had recited that there has been no mortgage foreclosure action pending against the Debtor is state court at any time. The only witness called at the hearing was the Debtor, who denied that she had ever been advised previously of any liability for drafting the loan modification papers, and further testified that she believed the correct measurement of the arrears could be ascertained by multiplying what she believed was the current monthly mortgage payment, adjusted periodically to reflect an accurate escrow for taxes, believed to be $1789.05, by the number of pre-petition delinquent payments, believed to be nine, which resulted in a total amount of $16, 101.95.

RN submitted no testimony. However, the court, over objection by Debtor's counsel, allowed NR's counsel to engage in an extended monologue in which he apparently attempted to argue that the claim on its face, including its exhibits, supported the arrears requested, in direct contradiction to counsel's previous statements that the claim was inaccurate and was to be amended.

The monologue of RN's counsel purported to demonstrate that the contents of the claim explained all aspects of the claim's recitation of the components of its arrears. However, clearly this is not so. The column devoted to "Escrow balance," column "O," does itemize the "Escrow deficiency for funds advanced" of $4639.38, but nowhere does the claim explain how

the alleged "Projected escrow shortage" of $6886.81 is calculated. Furthermore, this is the only significantly-disputed element of the escrow at issue, because the addition of the "Principal & interest due" of $9885.10 plus the "Escrow deficiency for funds advanced" of $4639.38 equals $14,504.48, which less the $1450.44 "funds in hand" would result in total arrears of $13,054.04, a figure less than the $16,101.45 which was supported by the Debtor's testimony.

At the conclusion of the hearing, the court referred the parties to the decision in In re Rodriguez, 629 F.3d 136 (3d Cir. 2010), and requested the parties to file simultaneous memoranda of law setting forth their various positions of the correct measure of the Debtor's arrears by February 2, 2021, and any replies by February 9, 2021.

The pertinent loan documents are the original underlying Mortgage and Note of January 17, 2002, between the Debtor and the original mortgage lender, Weichert Financial Services; the Motion to Approve the Loan Modification and Loan Modification Agreement of July 11, 2019; and a disputed Motion for Relief from the Automatic Stay, filed two days after the hearing at issue by a different firm than that which represented NR at the hearing at issue. stating, in its body, that the monthly mortgage payment is presently $1734.52.

The presence of different counsel for NR, combined with its apparent earlier admission in a colloquy with this court that the original claim filed was inaccurate and was to be amended, support the conclusion that NR's claim is likely to be inaccurate.

The Note contains no reference to computation of escrows in the transaction. The Mortgage, at paragraph 4, addresses escrows, but provides no formula for how actual or projected escrow deficiencies are to be charged, except to state that thy will be consistent with

3

the requirements of the Real Estate Settlement Practices Act (RESPA), although the pertinent provisions of RESPA are neither referenced nor summarized.

The Note, at paragraph 6 (E), does authorize the lender to collect payments of costs and expenses, including "reasonable attorneys' fees" to enforce payment of the obligations in the event of a "default" in payments due.  The Mortgage, at paragraph 15, likewise authorizes payment of charges, including "attorneys' fees" for protecting the lender in the event of "default."

The Loan Modification Agreement, at paragraph 3, merely incorporates the pertinent provisions of the Mortgage and Note regarding escrow calculations and rights to attorneys' fees.  There is no provision indicating that the Loan Modification was triggered by a "default" on the part of the Debtor or that any charges in connection therewith would be assessed against the Debtor, nor was there any attempt to recite the hours of service or hourly rate of any counsel for drafting the Motion or the agreement.  The Debtor must observe that all of these documents are adhesion contracts, the specific language of which was drafted by the lenders and their assigns, and that any ambiguities in same should be interpreted in favor of the Debtor.

The Rodriguez case cited by the court cannot provide much comfort to NR.  The narrow holding is that a pre-petition escrow deficiency is a "claim," collection of which, by adjusting the monthly mortgage payment upwards may be a violation of the automatic stay.  629 F.3d at 141-43.  The rejection of the dissent's argument that the court should allow adherence to RESPA's directives to excuse a stay violation establishes that actions consistent with RESPA are not a defense.  While clearly the law of this Circuit, the holding of Rodriguez has been supported in other jurisdictions.  See Campbell v. Countrywide Home Loans, Inc., 545 F.3d 348

(5th Cir. 2008); <u>In re Garnier</u>, 557 B.R. 349 (Bankr. M.D. Pa. 2016) (mortgagee cannot compel debtors to pay current real estate taxes); and <u>In re Beaudet</u>, 455 B.R. 671 (Bankr. M.D. Tenn. 2011) (objection to aspect of proof of claim seeking escrow shortage sustained).

A few words are added here about NR's claim for fees for preparing the loan modification agreement. There is no evidence that this agreement—which generally reduced the Debtor's payment obligations and deferred her arrears to the end of the loan—was drafted to remedy a "default" on the part of the Debtor, but that it was merely offered to her as a mutually-beneficial alteration of the loan's original terms going forward. Also, RN has not provided the requisite time records supporting the fees requested. See <u>In re Gordon-Brown</u>, 340 B.R. 751, 754-61 (Bankr. E.D. Pa. 2006).

It is unclear when the Debtor's monthly mortgage payments were reduced from $1789.05/month to $1734.52. The last Notice of any change in the Debtor's mortgage payment was in May, 2020, in the Prior Case, setting forth the change to $1789.05/month. It is unlikely that NR would continue to reduce the escrow and the total monthly payment if the amount of the obligation for which it is escrowing is increasing. The Debtor again emphasizes that nothing in the claim filed supports the calculation of a "projected" escrow deficiency in any amount, let alone the specific amount recited in the arrearage portion of NR's claim. The Debtor therefore continues to submit that her arrears owed to NR are no more than $16,101.45.

'

                                        Respectfully submitted,

                                        /s/DAVID A. SCHOLL
                                        512 Hoffman Street
                                        Philadelphia, PA. 19148
                                        610-550-1765
                                        Attorney for Debtor